Next case on our call is agenda number 14, case number 109029, People of the State of Illinois v. Arthur R. Manning. Counsel, you may hold it just a moment. I'm sorry. May you please record your honors, counsel? Michael Orenstein for the State Appellate Defender for Arthur Manning. In this case, Your Honor, the juror at issue said that people with my client's background needed to be, quote, locked up for life. He was asked, what if the law said otherwise? He could not answer the question twice. He was silent. And then he said he could follow instructions, and then maybe he could follow instructions, and then he said, I cannot be fair. The defense counsel says you can be fair. I cannot be fair. And he was asked again. He repeated he could not be fair, and it's not going to change.  And I just can't be fair to the defendant. No lawyer would let that pass. No judge probably would, but no lawyer would let that pass. So this was not trial strategy in our view. This was suicide. And this is different from cases where counsel could have had a legitimate strategy. It's very different from Metcalfe where there was a juror who was angry at the system, and one might say, well, the anger was probably more likely for the defendant, but it's something where the defense could gamble that it was actually something that could be down against the state. It's different than a gang case where you have a gang defendant, and maybe you have gang bias, but you also have gang witnesses, and a defense lawyer could gamble that the bias would be down against the gang witnesses. It's different from something where it's an inference, where a juror might say, well, I might believe cops more. This juror said he could not be fair four times. If this juror can be on, any juror can be on. If this juror can be on, there's really no reason to have a wide ear, and there's no possibility in this case of sound trial strategy. And this was also inherently prejudicial to my client for two reasons. First of all, Strickland explains that the reasonable probability test assumes an impartial tribunal. Here, as in the Virgil case in the Fifth Circuit that I discussed, you can't assume an impartial tribunal because there was one juror who said he could not be fair. So you can't apply the reasonable probability test in the same way. And that's what Strickland anticipated when it said, after going through the whole cause of both prongs of Strickland, they said that sometimes fundamental fairness must trump what we had just discussed. The second reason is that both the United States Supreme Court and this Court have explained that jury bias,  so it should make no difference whether it's caused by a judge or it's caused by a jury. It still corrupts the heart of the adversary system, and it's still something you can't evaluate through a factual evidentiary basis the way you can't say evidentiary error or a prosecutorial misconduct error or something like that. Here you have a juror who promised to be unfair. This Court cannot have confidence in the verdict, and my statement was shorter than some of the others, so I'll ask if you have any questions. Mr. Orenstein, you're no longer asking us to overrule METCAF. Is that right? You're trying to distinguish it? I don't think I was asking to overrule it, but I was asking to reconsider it, and now I'm asking to refine it. I guess you could change that language. I'm not asking to overrule it because under my analysis, METCAF would have been the same because METCAF was a gamble. METCAF, this was not a gamble. We mentioned in our unanimous opinion in METCAF that even if defense counsel's actions were not objectively reasonable, the defendant could not establish prejudice because he could not show a reasonable probability that the result of the trial would have been different if, in that case, Grievous, I believe was the juror's name, had not been ceded to the jury. That's correct. All right. So that portion of METCAF, if you don't ask us to overrule it, I mean, would that not be dispositive of your case? Well, I guess I am asking this court to go in a different direction than it was going. I think overrule would be an inaccurate comment because, in that case, the defense counsel, and there's a reference in METCAF 2 that defense counsel very briefly only argued under Chronic. He did not argue it under Strickland. So it's sort of like if you raise an equal protection challenge to a statute, it's not dispositive of a collateral. We said the Chronic standard didn't apply. Right. And we're not arguing Chronic. So we are asking to go in a different direction, but not on the same grounds that was argued in METCAF. All right. So you're really asking us, though, for an automatic reversal, right, that you don't have to really show prejudice? Well, we have two arguments. That is one of them. The other is on the facts. And I think it's important to note that in METCAF, in talking about the automatic reversal rule, we agreed with the decision in People v. Bowman, an appellate court case, and we quoted a Missouri appellate court opinion as follows. The rule requiring contemporaneous objections to the qualifications of jurors is well-founded. It serves to minimize the incentive to sandbag in the hope of an acquittal and, if unsuccessful, mount a post-conviction attack on the jury selection process. I mean, what we were getting there is that defense counsel could always leave a potentially biased juror on the panel and then ask or cash in on the free reversible error if defendant was convicted. So that certainly was affirmed in METCAF. That's true. Now, I have a specific answer to that and a general answer to that. My specific answer to that is this was a variety of two panels. And in the first panel, there was a juror that said that repeatedly could not promise to be impartial. You know, he said, I can't guarantee you this. The defense counsel made a challenge, and when the challenge was denied, the defense counsel struck the juror. And if defense counsel had that strategy, defense counsel largely would have done it then because defense counsel had no guarantee there would be someone on the second panel to have that strategy for. So that's why on the specific facts that this would be different than METCAF. In the general sense, trial lawyers simply don't go into trial to lose a trial that went on appeal. It's just not how they do it. As an appellate lawyer, you know, I wish they would put more attention to what was going on at appeal. But, I mean, evidentially, that's so for that. And the other thing is that it's not just two for one. It could be just as true for any error. It could be due for evidentiary ineffectiveness. It could be for prosecutorial misconduct. You know, any time you have a lawyer that could say, you know, other crimes could come in, you could say, oh, I'll just let that pass. I'll make a good appeal issue. So that's, in more general sense, is inherent in Strickland at that risk. My last question on this. I'm not sure what the difference between overruling and going in a different direction is. But let's put it this way. I mean, if using your terms, going in a different direction, if we don't go in a different direction from Metcalf and employ the rationale of Metcalf, does that defeat your claim? It does not defeat my claim because, if I can get my papers down here right, if you look at the facts of this case, do we mean as far as the prejudice part? Are you getting at that? We basically said that you couldn't prove prejudice. We talked about why there has to be a contemporaneous objection as far as sandbagging goes. We basically talked about the fact that it isn't per se a reversible error, you know, under chronic. So I'm wondering what's left. Well, I mean, as far as the prejudice, what's left is that this is a case that could have gone the other way with an unbiased jury, particularly with the heroin count where there was a written confession and alleged oral confession. There was nothing about heroin in the written confession from which an unbiased jury could have inferred that that oral confession never happened. And even with the cocaine, this was a case of where some officers said they made some controlled buys and then they went in the house and found cocaine and heroin, and there was a confession there too, a written confession. In the written confession, my client testified that the confession was coerced for various reasons, a lot of which was rebutted, but one thing which was not rebutted, which they could have rebutted, was that my client said that he was told that if you don't confess, we're going to charge your girlfriend and take away her children. And an unbiased jury could have easily found that my client took the fall for his girlfriend to protect his girlfriend. So it's not just the whole sort of structural error issue. I'm sure there's facts that are listed in the trial that support the position of the defendant. The test is, is there a reasonable probability that but for this juror being on the jury that the verdict would have been different? Well, that's the test most of the time. It strictly goes on to say sometimes fundamental fairness will override that. And my answer I have to that is that this so corrupts the adversary system where you have one juror who says I cannot be fair and gets on the jury, and all the other jurors who have said they can be fair or will try to be fair see this juror on the jury, and most of them on the second panel have seen that, and what message does that send? And the answer is it just corrupts the adversary system too much. And the other point I would say about Metcalfe, and that we are asking to go in a different direction, is that Metcalfe was before, except for one case, Peabody Hughes, it was before almost all this law that I've cited in my case, in my brief, that really there's a federal consensus that this cannot be considered in the same reasonable probability test, and there's at least probably eight or nine states that I've cited too. And so if this court should reconsider it, that's one good reason, because the law has really gone in a different direction. Thank you. In this case, counsel, this is a drug case. This is a drug case. And when the judge questioned the jury, this juror, 156, said he could be fair. Right. It was when defense counsel engaged in questioning, and it was disclosed that I think he asked him about a sex offender. Right. He said the law ought to be locked up or something. He was asking all the jurors about that. That's correct. Yeah. So would you say the jurors' answers were equivocal? No, I would not say they were equivocal. I give an example of a juror who was rehabilitated. Lots of jurors will say, can you follow the instructions? Well, I'm not sure. No, no, no. Well, the judge says all we're asking you to do is listen to the evidence and do this and this and that. And jurors say, yes, I can do that. I can be fair. No one thinks those jurors are equivocal, because that's where they ended up. Here he said, I can be, you know, he answered the question. He said, I can be fair. But then he said, I cannot be, he didn't say I could be fair. But as soon as he mentioned the word fairness, he said, I could not be fair. And he said, you can be fair. I cannot. And he said, it's not going to change. And there's nothing equivocal about that. And so contrary to Metcalfe, we would have to say in this case that there was a sua sponte duty on the part of the court to excuse that juror absent any kind of a challenge for cause or a use of a peremptory challenge. I wouldn't say, we're not arguing sua sponte due, we're arguing effective. Are you suggesting that implied, that I'm implying it in a sense, or that's the result? Well, that's the result, isn't it? Because if we find ineffective assistance because the attorney didn't ask the question, then it becomes, if you're the trial judge sitting on the next case and something like this comes up, you're going to think, well, maybe I have a responsibility to say, okay, you're excused. Well, I have two answers to that question. The first one is the judge has a third option between only letting the juror pass or striking the juror sua sponte. The judge can call the counsel and say, what in the world are you thinking? So that's one thing. The other thing is that it's inherent in Strickland. That would be no different than if a prosecutor was offering other crimes of innocence. It was perfectly obvious to this judge that this shouldn't come in and defense counsel shouldn't object. The judge is in the same position. So there's not a sua sponte duty, but it's no different than any other Strickland issue. Sometimes Strickland puts the judge in a tough spot, but it's no different for this case than an evidentiary case or a prosecutorial misconduct case or a 11510 case or anything else. But counsel, that would be, as Justice Garland said, the judge would be second-guessing the counsel on those issues all the time, what they should do. That's true, but you don't have to second-guess all the time. You only have to second-guess where it's very explicit that you have a juror. Well, what standards does the judge use in deciding which time he's going to say second-guess or micromanage the jurors? Well, I think there was a Utah case I cited, and I don't remember the name of it, in my brief, and they said, well, there's a difference between implied bias, suggested bias, inferred bias, and explicit admitted bias. And so if a juror says, well, you know, I'll believe the cops more or, you know, I'm really doubtful about sex cases or something like that, you know, that would not be, you know, stricken in effectiveness. But if he says, I cannot be fair, under oath, I cannot be fair. But then again, when the judge asked, he said he could. But the judge was only asking very generally, not to the reason he could not be fair. When he got to the reason he could not be fair, he was very clear, I cannot be fair. Should we at all consider the fact this wasn't a sex case, it was a drug case? And maybe the attorney had some reason to keep this guy in the jury. I understand he was maybe of foreign birth, and he felt that the guy was suspicious about authority figures. I mean, it leaves us to speculate. Maybe that's why we leave a lot of these things to the good knowledge of trial attorneys. You know, we don't require trial judges to interfere and manage their case for them. Well, I think there's lots of cases where you might, you know, really doubt what a defense counsel is doing and yet defer to them that way. Again, Metcalfe is a good example. I think most people in Metcalfe, most lay people reading Metcalfe would say, well, you know, this is going to be a pro-state juror. This isn't a juror who's going to be fair. You know, he was angry about what happened when it was a relative or a friend or was a victim, I think. But it was possible, there's a gamble. When a juror says, under oath, I cannot fulfill my responsibilities as a juror, that is not a matter of intuition. That is not a matter where counsel can say, well, I think he can fulfill his responsibilities. You have to take him or her at his or her word because it's just too much of a risk to the adversary system. And the Sixth Circuit makes another point, that the Constitution doesn't guarantee a juror just a jury trial. It guarantees an impartial jury trial. Defense counsel can no more waive an impartial jury than they can waive a jury. So unless there are any other questions, I would ask that this Court reverse and remand for a new trial. Good morning, Your Honors. Counsel, and may it please the Court. I'm Assistant Attorney General Carl Treble representing the people of Illinois. As this case has been presented now in briefing, this case simply calls for a Strickland analysis. First, whether or not defendant can show that his counsel was deficient in his performance. And second, whether or not defendant can show prejudice. And as this Court mentioned, this issue is governed by Metcalf. It's simply incorrect to say that. Did Metcalf overrule Glasper and Rivera? I'm sorry, I'm having trouble hearing you, Your Honor. Did Metcalf overrule Glasper and Rivera? I don't think so, Your Honor. Metcalf did hold that as far as the Strickland problem goes, there's three issues raised in Metcalf. As far as the Strickland analysis goes, Metcalf held that, first of all, this is a trial strategy matter that needs to be deferred to generally. And second of all, as far as prejudice, you do look to the trial evidence in determining whether or not there's a prejudice analysis. Rivera and Glasper, I thought, held that it was not subject to a harmless error review. I'm not hearing you again, Your Honor. I'm sorry. I thought that Rivera and Glasper held that when there's structural error, it's not subject to harmless error review. Right. And the difference is, Your Honor, these juror issues, these juror bias issues come up in several different contexts. The first context would be something like that, where the defendant makes a forecast challenge, exercises all of his peremptories, they're already gone, and it's determined that it was an actually biased juror. Then in Louisiana v. Sullivan, the U.S. Supreme Court says that reviewing courts don't look to the trial evidence, that basically prejudice is presumed. So if we decide that when the juror said that he could not be fair, if we decide that that was, that did establish it was a biased tribunal, then due trial should be granted. No, Your Honor, because under Metcalfe, what this court held is that trial courts don't have a sua sponte duty to strike such jurors, that it's left to the decision of the defense counsel. And what this court indicated and implied in Metcalfe, and I think the Utah court says more explicitly, is if there's some reason you can look to in the record to justify why a defense counsel might want this person on the jury, as Justice Garmon was alluding to in her questioning, then you defer to defense counsel even in those situations. Here, as we mentioned in our brief, this juror was someone with an international background, which was unique to all the other members of the panel and all the other veneer members, and he had had a couple of speeding tickets. And basically this was a no-win case for the defense attorney. He was faced with a situation where there was overwhelming evidence of guilt, and his only possible Hail Mary strategy basically was to try to convince jurors that his client didn't live at Sunset Court despite telling the police officers that he did and despite the fact that he was going in and out of that house selling drugs, basically using it as a warehouse to sell his drugs. So in this unique circumstance, this issue of, well, I was registered as a sex offender came up. So no, even if this court held that this juror 165 was actually biased and wasn't equivocal in the bias against sex offenders, then as long as there's something in the record to justify it, you wouldn't say that counsel was deficient in striking that juror. But again, because this is just raised in a Strickland analysis case, even if you disagreed with the state's position on the performance prong as to whether or not this was a reasonable strategy, the court would still have to review the prejudice prong. And as this court held in Metcalf, then the court would look to the strength of the trial evidence, which, as I mentioned here, is overwhelming. Police officers were sold cocaine by this defendant who went in and out of the house at Sunset Court in order to obtain that cocaine, selling it to two undercover officers. And then he confessed to the police later that he did live at Sunset Court and told them where they could find heroin. I thought prejudice would be presumed if it's a biased tribunal. No, Your Honor. Prejudice would not be presumed under Metcalf. There are jurisdictions who disagree with that holding. What about Glasper and Rivera? Again, Your Honor, my reading of those cases is that those cases came up in the context of a situation where there was a forecaused challenge, and I may be misremembering those cases. But this court's holding in Metcalf states that there are jurisdictions who disagree about the sua sponte nature. So the answer is no, Your Honor. You would not just presume bias and then or, excuse me, presume prejudice and then overrule. You would have to look at the trial evidence. But the fundamental precept of your question is incorrect. There was equivocation here. There were jurors, veneer members, who expressed unequivocating bias. And defense counsel either exercised a peremptory on them or made a successful forecaused challenge. So just to review, I think it's important to know that this was a unique factual situation because this issue of the status as a sex offender did come up, and I think it's fair to say that almost everyone is biased against sex offenders except for perhaps family members of sex offenders or sex offenders themselves. So the determination for defense counsel was how do I get the least biased people possible against sex offenders on this panel. So he struck in his initial, the first six-pack, he was faced with a few problematic potential jurors. One was a policeman who had done narcotics busts, juror number 47. So, of course, defense counsel struck juror number 47 using a peremptory challenge because this is a drug case ultimately. He also struck juror 41 who had said that he had kids at home and he would be concerned about the sex offense, that he would try to treat them equally, but he did have kids at home and he would be concerned. And then juror 126 was also struck peremptorily in forming the first group of six panel members, who had also said that he had two girls at home and he would be on guard and could not guarantee that he would not be biased. So the strategy here seems to be definitely strike someone who has been a police officer and done drug busts and also strike anyone who has expressed a concern about having kids at home and automatically assumed that a sex offense in someone's past meant that they were a danger to children. So then he was forced with facing the second six-pack, and juror 165 was one of the next six people called to initially fill that panel. When filling that panel, right after questioning juror 165, there was two much more problematic jurors that came up immediately after 165. Juror 128 said he had a big problem, or she had a big problem with sex offenders right away off the bat. She said that she could not be impartial, she has daughters and has a grandson, and she couldn't even presume that the person would be innocent. The defense counsel then also questioned juror 124, who said that as soon as she found out about the sex offense, her opinion of the defendant dropped dramatically, and that if the evidence was 50-50, she would have to lean towards a guilty verdict, thus expressing an unwillingness to even follow the basic judge's directions. So defense counsel was faced with juror 165, who had equivocated, and said on one hand he could be fair, and then said on the other hand he could not, and comparing that to jurors 128 and 121. So he exercised successfully a four-cause challenge on juror 128, but the trial court said I won't give you juror 121. So he was forced to exercise another peremptory on juror 121. That meant he had already exercised five peremptories, and he still had three more seats to fill on the jury plus an alternate, and he only had two remaining peremptories. In that situation, it is not an unreasonable exercise of defense counsel's skills to decide to hold on to those two remaining peremptories in case more people came up who had exercised, who had demonstrated concern because they had kids at home. His reasonable trial strategy, from the record, we can glean, was to strike people who had kids at home and said that they were concerned about sex offenses as a matter of caution about their children. That is a very personal-sounding bias, whereas juror 165 had equivocated, had said he could be fair, and then even when he was saying that he could not be fair, he was just saying it in the hypothetical. He wasn't saying that he had any personal experience with sex offenders or that he had children at home that he had to watch out for. So under those unique factual circumstances, it is reasonable for a defense counsel to allow someone like juror 165 to come through, and this court should not just go ahead and assume bias in that circumstance. But even if this court felt that it was deficient performance, you would still have to analyze prejudice under the normal, reasonable probability standard of Strickland. And here there was, as I mentioned, overwhelming evidence of guilt. And it's important to note that this court's been called upon to hit a moving target a little bit, and the PLA defense counsel asked this court directly to overturn Metcalf and specifically hold that trial courts have a sua squante duty in these circumstances to act. And defense counsel then, in his briefing in here at oral argument, has said he's not asking this court to overturn Metcalf. In light of the fact that he's just raising a Strickland analysis, then it's important for this court to just apply the normal Strickland analysis. And even if he disagreed with the state's position on performance, which was also, of course, considered and agreed with in Metcalf, then you would still have to analyze the prejudice prong and either have to overturn Metcalf's reliance on trial evidence as part of its Strickland analysis and basically form a new test, or simply say that, yes, according to this trial evidence, he cannot show prejudice. Defense counsel answered one of your questions by saying that the concerns expressed in Metcalf regarding whether or not a defense attorney can poison the well and get a second bite at the apple, number one, did not happen here, and number two, shouldn't really be a concern because they never happened. Of course, that reasoning would directly overrule Metcalf. The response of, number one, it didn't happen here, well, we just don't know. I'm not certainly going to impugn the defense counsel in this case. I don't know what his intention was. I think he just felt like this was a less concerning juror than some of the other ones he was facing, and he only had two peremptories left with more seats to fill, so it was a strategic decision. But the reasoning in Metcalf, of course, in this court's decision in this case, apply wholesale to all cases going forward, and if we did hold that a defense attorney's actions like this would be presumed to be prejudicial, then they could get two bites at the apple by saying, okay, I'll go ahead and let the, I have a no-win case, there's no possibility that I'm going to convince a jury otherwise, that this person has not been in possession of cocaine and wasn't in possession of heroin. And so with nothing to lose, essentially, I'll go ahead and poison the well and allow someone like this to come on the panel and then get an automatic reversal. So I'll try for a juror nullification here in this first trial, and if that doesn't work, I get the automatic appeal, automatic reversal in a new trial where I can try it again with another jury. That, of course, shouldn't be the way the system works. Unless there are any further questions, Your Honors, I'd ask that you affirm the appellate court's decision below. Thank you. Several points, Your Honors. First, as far as this whole issue of sandbagging and lying in the weeds, two years ago in a case, People v. Hernandez, that argument was made in terms of conflict of interest and couldn't counsel have let a hidden conflict of interest lie and then just go through on it and then someone else would bring it up on appeal. And the answer this Court gave is they didn't say that could never happen, but because conflict of interest is so important, we're just not going to assume that. And the impartial jury, which is the right state in the Constitution, is just as important as conflict of interest. Another point I want to make is that counsel said that some other jurisdictions disagree. And it's not just that some other jurisdictions disagree. It's a federal consensus. Every federal court that's considered this issue, and I would certainly argue every state court that's given more than two paragraphs to it, would agree with our side. The third point is, as far as Glasper, I remember one quote in Glasper saying that if we knew there was a biased juror in this case, we would not hesitate to reverse. That's exactly what we have here. And the last point I would make, very briefly, counsel said that in my PLA I said that we were asking to overturn Metcalf and also we were arguing a sua sponte duty. I don't remember what the language I said about Metcalf in my PLA was. I'm sure I never mentioned anything about a sua sponte duty. And the last point I want to make is that counsel said this case was unique, and we feel this case is unique, but for a different reason. There is no ñ neither side has been able to put a case on point where a juror has specifically said that he ñ in the Illinois case, a juror has specifically said that he could not do his job or she could not do her job and has remained on the jury. There are cases from other states, which I've cited, but the reason that there's no Illinois case is because it's just ñ it's not something that's going to happen once except in a great blue moon, and it happened here and defense ñ and the client was denied his right to an impartial jury, and that's why this court should reverse. Thank you very much. Thank you, counsel. Case number 109029 will be taken under revise.